Filed 5/15/15  P. v. Herbert CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PATRICIA GAYLE HEBERT,<br><br>        Defendant and Appellant. | A142067<br><br>(Humboldt County Super. Ct.<br>No. CR1202938) |

Appellant Patricia Gayle Hebert, appeals from the judgment of the Humboldt County Superior Court finding her to be not competent to stand trial within the meaning of Penal Code section 1368 et seq.[1] and ordering her to submit to involuntary administration of psychotropic medication pursuant to section 1370, subdivision (a)(2)(B)(i)(II).[2]  Appellant's court-appointed counsel has filed a brief summarizing the

---

[1] All subsequent statutory references are to the Penal Code.

[2] That provision authorizes a court to "hear and determine" whether "[t]he defendant lacks capacity to make decisions regarding the administration of psychotropic medication"; specifically to "hear and determine whether . . . [t]he defendant is a danger to others, in that the defendant had inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another that resulted in his or her being taken into custody, and the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others.  Demonstrated danger may be based on an assessment of the defendant's present mental condition, including a consideration of past behavior of the defendant within six years prior to the time the defendant last attempted to inflict, inflicted, or threatened to inflict substantial physical harm on another, and other relevant evidence."

1

facts and asking this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

## I.

Appellant's counsel acknowledges that *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*) held that *Wende* and *Anders*[3] do not apply to appeals in proceedings such as this that are civil in nature,[4] and that due process and equal protection requirements also do not compel application of *Wende/Anders* procedures to Lanterman-Petris-Short Act proceedings, and that the *Ben C.* court rejected a request to extend those procedures under the court's inherent power to declare the rules of California appellate procedure. Counsel argues, nonetheless, that "the California Supreme Court would, and should, reach a different result" in this incompetency case because the underlying criminal case is still pending. After describing the facts and requesting *Wende* review, appellant's brief advances two legal "arguments." The first is that "DUE PROCESS REQUIRES THAT *WENDE/ANDERS* PROCEDURES BE APPLIED TO AN APPEAL FROM AN INCOPETENCY [*sic*] COMMITMENT AND RELATED INVOLUNTARY MEDICATION ORDER" and the second is that, IF THIS COURT CONCLUDES THAT *WENDE/ANDERS* PROCEDURES ARE NOT APPLICABLE, APPELLATE COUNSEL, AND THIS COURT, MUST COMPLY WITH THE PROCEDURES OUTLINED IN *BEN C.*"

We decline to address appellant's initial legal argument, which challenges the reasoning and findings of the Supreme Court in *Ben C.*, because it is advanced in an unopposed *Wende* brief, rather than an ordinary appeal or writ proceeding, which we

---

[3] *Anders v. California* (1967) 386 U.S. 738.

[4] The order in this case finding appellant not competent to stand trial within the meaning of section 1368 constitutes a judgment in a special proceeding governed by the rules applicable to civil, not criminal proceedings. (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) The order directing involuntary administration of psychotropic medication, which is also governed by section 1368, is also a special proceeding civil in nature. (*People v. Stanley* (1995) 10 Cal.4th 764; *People v. Masterson* (1994) 8 Cal.4th 965, 969-970.)

believe would be a more appropriate vehicle by which to challenge the conventional application of a Supreme Court holding.  Accordingly, we take instruction from the guidelines prescribed in *Ben C.*, which are as follows:  "If appointed counsel in a conservatorship appeal finds no arguable issues, counsel need not and should not file a motion to withdraw.  Instead, counsel should (1) inform the court he or she has found no arguable issues to be pursued on appeal; and (2) file a brief setting out the applicable facts and the law.  Such a brief will provide an adequate basis for the court to dismiss the appeal on its own motion.  Dismissal of an appeal raising no arguable issues is not inconsistent with article VI, section 14 of the California Constitution requiring that decisions determining causes 'be in writing with reasons stated.'  Nothing is served by requiring a written opinion when the court does not actually decide any contested issues." (*Ben C., supra*, 40 Cal.4th at p. 544, fns. omitted.)

In a footnote, the *Ben C.* court stated that "[t]he conservatee is to be provided a copy of the brief and informed of her right to file a supplemental brief." (*Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 6.)  Counsel for appellant states that he has informed appellant of this right and she has not filed a supplemental brief.[5]  Also in a footnote, the *Ben C.* opinion states that the appellate court "may, of course, find it appropriate to retain the appeal." (*Id*. at p. 544, fn. 7.)

As we see it, *Ben C.* provides authority for us to *either* dismiss this appeal on our own motion *without providing Wende* review *or* to provide *Wende* review and affirm the judgment or, if the record presents an arguable issue, order further briefing.  Given the intrusion on personal autonomy and side effects that may result from the involuntary administration of psychotropic drugs (which we described nearly three decades ago in *Riese v. St. Mary's Hospital & Medical Center*, *supra*, 209 Cal.App.3d 1303, we elect the latter course.

---

[5] Appellate counsel states that, as he interprets *Ben C.*, "this court has an independent obligation to inform appellant of her right to file a supplemental brief." Counsel cites no authority for his "interpretation" of *Ben C.*, however, nor explains what benefit would accrue from judicial repetition of the advice received from counsel.

## II.

As indicated by the fact that the original and augmented clerk's transcripts contain 2,106 pages bound in 7 volumes, the proceedings below are somewhat Dickensian. At the time appellant's competency was placed in doubt, appellant was representing herself in four criminal cases that had not been formally consolidated but were being litigated together. Three of the cases involved misdemeanor offenses (the offenses charged in the three complaints were one or more counts of trespassing (§ 602, subd. (m)), resisting an officer (§ 148, subd. (a)(1)), and disobeying a court order (§ 166, subd. (a)(4)). The felony charged in the fourth case was willful and malicious harassment of an individual (§ 646.9, subd. (b)). The district attorney had moved to consolidate the four cases, but that motion was mooted by the suspension of criminal proceedings as a result of the question of competency and never ruled upon. As a result, the three complaints charging only misdemeanors were treated as appeals to the appellate department of the superior court, not to this court.[6] We do not consider it necessary to relate the facts pertinent to the underlying criminal cases.

The proceedings pertinent to the orders finding appellant not competent to stand trial and authorizing involuntary administration of psychotropic medication were the following.

On September 16, 2013, the trial court, on its own motion, declared a doubt as to appellant's competency to stand trial pursuant to section 1368. Appellant did not want to

---

[6] Appellant's notice of appeal states she is appealing the court's ruling in four different criminal cases; Nos. CR1202938, CR1204623, CR1202190, and CR1103561. The record indicates the first case involves a felony charge. Therefore the appeal in that matter is properly before this court. (See § 1235, subd. (b).) However the latter three cases involve misdemeanor charges and appeals from misdemeanor cases are within the jurisdiction of the appellate division of the superior court. (See § 1466.) Counsel for appellant states, and this court has confirmed, that the Appellate Division of the Humboldt County Superior Court is considering or has considered appeals by appellant in the three misdemeanor cases. Accordingly, our ruling in this case governs only the felony case; No. CR1202938.

4

be represented by counsel, even with respect to competency, and filed a *Marsden* motion.[7] The motion was heard and denied on February 20, 2014.

On April 28, 2014, appellant's attorney waived the right to a jury trial on the issue of competency. After a hearing on that same date based on written reports, the court found appellant not competent to stand trial. The next day, the court issued a Judgment of Mental Incompetence and ordered that evaluations be prepared to determine the appropriate placement. The court also ordered a psychiatric evaluation of appellant, who was 48 years of age, in order to determine whether the involuntary administration of psychotropic medication should be authorized.

On May 23, 2014, the court found that the appropriate placement was Napa State Hospital and that appellant lacked capacity to make decisions regarding antipsychotic medication and found that if such medication was not administered it was probable appellant would suffer serious harm. The court also found appellant was a danger to herself and was charged with a serious crime against person or property. On the basis of those findings, the court ordered the involuntary administration of antipsychotic medication.

Appellant filed a notice of appeal on July 3, 2014.[8]

### III.

The evidence pertinent to the issues of competency and the administration of psychotropic drugs essentially consisted of (1) the Forensic Psychiatric Evaluation of appellant by Robert E. Soper, M.D., and a supplemental evaluation, both dated February 5, 2014; (2) the report to the court of Jason G. Roof, M.D., who met with appellant in 2014; and (3) the May 5, 2014 evaluation of appellant by Staff Psychiatrist Jennifer Wilson, M.D., of the Humboldt County Department of Health and Human Services.

---

[7] *People v. Marsden* (1970) 2 Cal.3d 118.

[8] The trial court did not issue a formal order of commitment until July 16, thirteen days after the filing of the notice of appeal. However, since the court's manifest intention to issue that order was apparent long before the filing of the notice of appeal, we deem the notice of appeal timely rather than premature.

5

Dr. Soper noted that appellant's abnormal behavior over a period of years was "well documented in copious police and victim documents" indicating that she "has persistently harassed, been verbally abusive and outright threatening to numerous parties" in the community. For example, one of appellant's victims, Jane Shor, owned a home at which her deceased husband, Mr. Morgan, had allowed appellant to store her belongings. When Morgan died and appellant was told she would have to remove her belongings she refused to do so, stating she would "burn down the home" of anyone who removed her belongings. She began harassing the parents of Morgan, claimed he was not dead but "just missing," and posted numerous notices on the property asserting her right to be on the property and making threats. Dr. Soper also noted that appellant both questioned whether Morgan was actually dead and suggested his wife had killed him. Videotapes made by a friend of Shor, provided to law enforcement authorities, showed appellant physically assaulting her. In May 2011, appellant began constructing barricades of the house, and placed her non-operational vehicle on the premises. The victim reported that she was unable to use her home for fear of appellant "and her erratic and irrational behavior."

Shor stated that a restraining order against appellant had issued in Siskiyou County, and Tehama County had issued a warrant relating to appellant holding at gunpoint the owner of a ranch in that county. In a letter to Humboldt law enforcement authorities, the rancher stated that it took 18 months to remove appellant from the property, after she claimed ownership of the property and changed the locks on the doors.

Dr. Soper stated that appellant's "copious" handwritten legal filings (which account for the unusual size of the clerk's transcript, and speak for themselves) "demonstrate a thought style which is vague, circumloquacious, and focused on a sense of persecution. While full of legalese, [these materials are] so viscous and rambling in its verbiage that it is hard to understand." Dr. Soper felt there was "a clear delusional quality" to appellant's interpretation of the laws and thoughts, many of which were "bizarre." For example, appellant "suggests" that one of her victims "is a clearing house

6

for a sex change operation for law enforcement system," and that the victim "has a number of surgically altered 'look a likes' positioned in the community."

In Dr. Soper's opinion, appellant "appears to be not competent to stand trial" and "in need of further neuropsychiatric intervention" although "[t]here is not current treatment as the [appellant] does not recognize there is any problem." He diagnosed appellant as suffering "Delusional Disorder NOS [i.e., not otherwise specified]—severe," with "schizotypal traits."[9]

According to Dr. Soper, "[a]ntipsychotic medications are not only medically appropriate" for appellant, but "they are medically necessary." He also believes appellant "is not medically competent to refuse medications as she does not understand the risks and benefits of using them," that antipsychotic medications are necessary to restore appellant to competence, and that appellant "would reasonably be considered gravely disabled under [Welfare and Institutions Code section 5150, a provision of the Lanterman-Petris-Short Act]" and "[s]he has relied on her abuse of others to maintain shelter for herself." According to Dr. Soper, "[t]he benefits of treatment with antipsychotic medications far outweigh the risks. Alternative treatments are unlikely to be sufficient to restore [her] to competence."

Jason G. Roof, M.D., a clinical professor in the Department of Psychiatry and Behavioral Science at the University of California at Davis, interviewed appellant while she was detained at the Humboldt County jail. She did not acknowledge his presence or that of the two officers who brought him to her quarters; except that "in an irritable, angry manner [she] complained that she had no proof who I was and that she had been presented with no court order regarding my appointment." When Dr. Roof offered to provide his court appointment form, she paused for a length of time, refused to answer the question, and "began a bizarre narrative about how she was also a medical professional but went to 'a different college.' " Telling Dr. Roof that people with his

---

[9] According to the Oxford English Dictionary, "schizotypal" is "a personality type in which schizophrenia is potentially or actually present."

"form of medical training/belief system would be unable to adequately understand her. She would not further describe what type of medical training/belief system she belonged to or why western medicine/psychiatry would be ineffective in evaluating her capacity to stand trial. She remained angry, fearful, and guarded. It was clear that she perceived me as a threat. She remained greatly concerned that I was misrepresenting myself."

Appellant became increasingly guarded and hostile and accused deputy sheriffs of putting her in danger, and failing to provide warning of Dr. Roof's visit. After appellant began talking about matters unrelated to Roof's repeated requests that she agree to be interviewed, "[s]he irritably stated that she had decided that we were not 'a good match' and she would therefore not participate in an interview."

On the basis of his interview and various documents provided him regarding appellant's behavioral history and the criminal charges against her, as well as the hundreds of handwritten documents appellant had filed with the court, Dr. Roof concluded that appellant "has suffered from a primary psychotic disorder for many years and the manifestations of her psychosis have negatively impacted a number of individuals in various communities." In his opinion, appellant "holds multiple delusional beliefs with clear paranoid themes," such as "persecution, being in grave danger from others which necessitates 'Safer House' residence."

In Dr. Roof's medical opinion, appellant was more likely than not "unable to understand the nature of the criminal proceedings which she faces and could not assist counsel in the conduct of a defense in a rational manner . . . [and] has exhibited fundamental and ongoing misunderstanding of her legal situation. Additionally, she has been unable to assist her attorney instead stating that she wants to represent herself. [Appellant] has expressed belief that the court lacks jurisdiction to pursue the current legal action and to order an evaluation of her competency to stand trial."

Dr. Roof also opined, "with reasonable medical certainty," that appellant "did pose an increased acute risk of danger to herself and others. While she did not specifically report active suicidal or homicidal ideation, her active psychosis and increased level of hostility increase her risk of violence toward others."

8

In light of her schizophrenia, Dr. Roof believed appellant "will require an antipsychotic medication for treatment of her symptoms and restoration to competency" but it is "probable she will be unwilling to consent" and "lacks capacity to make decisions about such medications and will require an order to involuntarily medicate."

When she interviewed appellant at the Humboldt County Correctional Facility, Dr. Jennifer Wilson, the staff psychiatrist of the Humboldt County Department of Health and Human Services, was aware that appellant was charged with felony stalking, misdemeanor trespass, resisting an officer, and contempt of court, and had read Dr. Soper's report. As was the case with Dr. Soper and Dr. Roof, appellant refused to respond to Dr. Wilson's questions. After a while, however, "she began to verbalize a long confusing list of incidents in which she felt that she was being harmed and rights were violated by law enforcement and judges. She was unable to stop talking for a long time, and asked multiple times for me to contact Jerry Brown, Diane Feinstein, and Donald Trump on her behalf because 'they are my family and will know what to do to help me.' " Appellant also stated that "she owns 50 million dollars worth of gold . . . amongst her many properties and ranches throughout Nevada and California," "that she believes that the correctional staff has been 'moving the gold around,' " "that she has currently hundreds of employees who depend on her," and that she does not feel safe in the Humboldt County jail.

Like doctors Soper and Roof, Dr. Wilson concluded that appellant suffered a "psychotic disorder," "lacks the ability to participate in her legal case," "is not capable of participating in medication decision-making and that [appellant] suffers from severe delusional disorder not otherwise specified."

**IV.**

As counsel for appellant says, in order to find a person not competent to stand trial, the trier of fact is required to find that the presumption of competence has been rebutted by a preponderance of the evidence and the appellate court, viewing the evidence in the light most favorable to the prevailing party, must " ' " 'ensure the evidence is reasonable, credible, and of solid value.' " ' " (*People v. Clark* (2000) 82

9

Cal.App.4th 1072, 1082.) In the context of competency, substantial evidence "has been defined as evidence that raises a reasonable doubt concerning the defendant's competence to stand trial." (*People v. Welch* (1999) 20 Cal.4th 701, 738; see also *People v. Johnson* (1980) 26 Cal.3d 557, 576-577.)

With respect to the validity of the order authorizing involuntary administration of antipsychotic medication we look to section 1370. Where, as here, the trial court issued the order on the ground that a defendant unwilling to consent to administration of such medication "lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health will result," the applicable provision of section 1370 is subdivision (a)(2)(B)(i)(I). Under that provision, the validity of the order "requires evidence that the defendant is presently suffering adverse effects to his or her physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that the defendant has a diagnosis of mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant."

Having reviewed the entire record, we conclude that the psychiatric evaluations and diagnoses of appellant by Doctors Soper, Roof, and Wilson, and their expert opinions, provide substantial evidence that (1) raises a reasonable doubt concerning appellant's competence to stand trial, and (2) establishes that appellant is presently suffering adverse effects to her mental health and lacks capacity to make decisions regarding the administration of antipsychotic medication. For those reasons, we also conclude that the orders finding appellant not competent to stand trial and authorizing involuntary administration of psychotropic medication, and the judgment incorporating those orders, are supported by substantial evidence.

We also find that appellant was at all material times represented by competent counsel who acted to protect her rights and the superior court had jurisdiction to issue the

orders finding appellant not competent to stand trial and authorizing involuntary administration of psychotropic medication.

## DISPOSITION

For the foregoing reasons, the orders finding appellant not competent to stand trial and authorizing involuntary administration of psychotropic medication, and the judgment entered thereon, are affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.

11